# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOAN OQUENDO,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLEHOUSE CORPORATION<br><br>Defendants. | CIV. NO. 17-2238 (MDM) |

## OPINION AND ORDER

Plaintiff Joan Oquendo ("plaintiff" or "Oquendo"), a current Costco employee, brings this action against Costco Wholehouse Corporation d/b/a Costco Wholehouse #365 ("defendant" or "Costco") alleging pregnancy and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. §§ 2000e-5 et seq. ("Title VII), disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Oquendo also asserts supplemental claims under Puerto Rico's Law 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 29, §§ 467–474 ("Law 3"); Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, §§ 146–151 ("Law 100"); Law 44 of July 2, 1985 P.R. Laws Ann., tit. 1, § 504 ("Law 44"); Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29, §§ 194 et seq. ("Law 115"); and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

Presently before the Court is Costco's motion for summary judgment (Docket No. 26,) which Oquendo opposed. (Docket No. 32). She also filed a statement of additional facts with her opposition. (Docket No. 33). Costco then filed a reply in response thereto. (Docket Nos. 35-1; 36). Next, Oquendo filed a sur-reply. (Docket No. 37). In light of the findings of fact and legal discussion set forth below, the Court **GRANTS** Costco's motion for summary judgment **in its entirety**.

Before delving into the analysis of Costco's motion for summary judgment, however, the Court must entertain two motions to strike filed by Costco, which are directly related to the summary judgment motion and, as such, engross the Court's opening discussion.

## I.     <u>**Costco's Motions to Strike**</u>

In its first motion, Costco asks the Court to strike specific "scandalous" and "slanderous" language directed at Costco and its legal counsel, which was allegedly included in plaintiff's opposition to the motion for summary judgment and in plaintiff's sur-reply. (Docket No. 38). In its second motion to strike, Costco requests that the Court strike plaintiff's sur-reply (Docket No. 37) for being untimely filed and for not being filed with prior leave of Court, in violation of Local Rule 7(c). (Docket No. 39). Plaintiff filed a single opposition to both motions to strike. (Docket No. 40). For the following reasons, the Court **GRANTS** both motions to strike.

### A.     <u>Motion to Strike "Scandalous" and "Slanderous" Language</u>

Judge Bruce S. Mencher defined civility as:

> [The] decent behavior and treatment characterized by generally accepted social behavior and politeness practiced toward those with whom we come into contact whether they be judge, lawyer, witness, or court personnel.

Bruce S. Mencher, Civility: *A Casualty of Modern Litigation*, The Washington Lawyer, Sept.–Oct. 1993, at 19, 20. "To opposing counsel, a lawyer owes the duty of courtesy, candor in the pursuit of the truth, cooperation in all respects not inconsistent with the client's interests and scrupulous observance of all mutual understandings." American College of Trial Attorneys, Code of Trial Conduct, p. 1 (1994). "The lack of civility within the legal profession constitutes a 'societal problem, increased costs to the client, and the need for greater judicial leadership . . . .'" *Jaen v. Coca-Cola Co.*, 157 F.R.D. 146, 152-53 (D.P.R. 1994) (citing Mencher, *supra,* at 20). In pertinent part, moreover, Canon 29 of the Puerto Rico Canons of Professional Ethics states that:

> Clients, not lawyers, are the litigants. Any ill-feeling existing between clients should not influence counsel in their conduct and demeanor toward each other or toward litigants in the case. All personal matters between counsel

> should be scrupulously avoided. During the course of a trial
> it is improper to allude to the personal history or individual
> peculiarities or idiosyncrasies of opposing counsel.
> Personal colloquies between counsel which cause delay and
> provoke disputes should also be avoided.
>
> It would be highly improper for a lawyer to make false
> imputations which affect the reputation and good name of
> a colleague. When there are serious grounds for complaint
> against colleagues, it is the duty of a lawyer to submit his
> charges to the competent authorities, using for that
> purpose the means provided by law.

§29 Personalities arising between opposing counsel, T. 4 Ap. IX, § 29. While the Canons of Professional Ethics of Puerto Rico do not govern the conduct of attorneys in federal court, "[n]onetheless, the *raison d'etre* of both the Model Rules and the Puerto Rico Canons of Ethics are akin—to preserve the integrity of the legal profession." *In re Jesus M. Rivera–Arvelo, USDC–PR*, 830 F. Supp. 665, 667, n.5 (D.P.R. 1993). Because the Canons of Professional Ethics of Puerto Rico are similar in spirit to those of the American Bar Association Model Rules of Professional Conduct, courts in this District look at the Puerto Rico Canons and their interpretive jurisprudence for illustrative purposes. *Reed v. Seguros Triple-S, Inc.*, No. 96-1171 (SEC), 1997 WL 711371, at *1 (D.P.R. Oct. 24, 1997).

In the present case, two of the plaintiff's filings in response to Costco's motion for summary judgment included unprofessional and highly improper language clearly aimed at bad-mouthing Costco and, necessarily, its counsel. Plaintiff, for example, requested that the Court ". . . deny a *deceitful* dispositive motion," and referred to Costco's motion as "profuse with *deceitful* storytelling of what defense wants the Court to believe." Basically, plaintiff's counsel accused Costco, and more pointedly, its attorneys, of engaging in deceitful and nefarious tactics in its motion for summary judgment. It goes without saying that it is highly unethical and indecorous for an attorney to make dishonest or damaging imputations against the opposing party or against the reputation and good name of a fellow attorney. Costco correctly understood plaintiff's counsel's accusations as a direct attack on the professional integrity and reputation of its attorneys. The unfounded word choices and ill-mannered form of

"argumentation," included in the plaintiff's filings, serve no purpose but to throw "shade" at the opposing side, while doing nothing to advance her position in a legitimate and juridical sense. Such conduct is unbecoming of a member of the bar of this Court and will not be tolerated.

Furthermore, plaintiff's counsel's poor choice of words has required the Court to utilize its scarce judicial resources to discuss his lack of civility and imprudent arguments. It is also troubling that, upon reviewing Costco's motions, it became pellucid to the Court that plaintiff's categorization of Costco's arguments as "deceitful" were in fact deceiving because it became clear to the Court that Costco's motion was grounded on sound legal arguments. Plaintiff, of course, may legitimately disagree with Costco's position but rather than posturing with unethical averments directed at the reputation of the opposing side, she should have instead focused on advancing her legal arguments in a legitimate and well-reasoned manner.

The Court cannot stress enough that attorneys admitted to practice in this Court "should avoid disparaging personal remarks or acrimony toward opposing counsel, and should remain wholly uninfluenced by any ill feeling between the respective clients" and they "should abstain from any allusion to personal peculiarities and idiosyncrasy of opposing counsel." American College of Trial Attorneys, Code of Trial Conduct, p. 7 (1994). Moreover, the parties and their counsel were specifically instructed in this case "to meet their legal and *ethical obligations* to each other, to litigants and to the system of justice, thereby achieving the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service." *See* Chief Judge Gustavo A. Gelpí's Standing Order citing to the standards of civility initially designed in 1996 by the late United States District Judge Salvador E. Casellas. (Docket No. 4-5).

The Court recognizes that litigating is not always a "cup of tea," nevertheless, civility must always be observed between the parties and their counsel, as it is a vital pillar in the justice system and in our society. To that effect, "courts have a responsibility

not to permit attorneys to ignore the concept of civility when its disregard may hinder the quest for justice." *Jaen,* 157 F.R.D. at 152–53 (citing Mencher*, supra,* at 20).

The Court will not tolerate the deliberate disregard of civility displayed by plaintiff's counsel in his pleadings. Therefore, in enforcing its solemn duty and responsibility to ensure compliance with the pertinent rules of ethics and professional conduct, the Court admonishes plaintiff's counsel for his lack of civility and orders him to refrain from using unprofessional and unethical language in his filings. Costco's motion to strike is **GRANTED** and the language complained of by Costco is stricken.

### B.     Motion to Strike Plaintiff's Sur Reply

Costco also moves to strike plaintiff's sur reply (Docket No. 37) on the grounds that it was untimely filed, and it was filed without prior leave of Court in violation of Local Rule 7(c). Costco is correct. The sur reply was indeed belatedly filed without first obtaining leave from the Court. More specifically, Costco filed its reply in response to plaintiff's opposition to the motion for summary judgment on December 21, 2018. (Docket No. 36). Pursuant to Local Rule 7(c), Plaintiff had seven (7) days to file a sur reply, that is, until December 28, 2018. Plaintiff however filed it on January 2, 2019, five (5) days after the required seven-day timeframe had expired. (Docket No. 37). As such, plaintiff's sur reply is indeed untimely and, in addition, plaintiff also failed to request prior leave of Court, which Local Rule 7(c) compels. To make matters worse, in response to Costco's motion to strike, plaintiff did not offer any justification for her non-compliance with the requirements of Local Rule 7(c). (Docket No. 40). Plaintiff only claimed that "defendant attempt[s] to silence [her] sound arguments in favor [of] submitting to trial examination of defendant's unlawful actions." *Id*. Nothing more. Plaintiff did not justify her failure to comply with Local Rule 7(c) nor did she raise a legitimate argument in order to avoid the inevitable striking of her intended sur-reply.

Based on the foregoing, in strict compliance with the Local Rule's directives, plaintiff's sur reply will be stricken from the record. Costco's motion to strike plaintiff's sur reply at Docket No. 37 is **GRANTED**. The sur reply will not be considered.[1]

---

[1] *See e.g. Estate of Berganzo Colon v. Ambush*, 2011 WL 13210047, at *2 (D.P.R. Mar. 4, 2011) (granting defendant's motion to strike because the plaintiffs' "supplement" was filed without prior leave of court); *Esso Standard Oil Co. (Puerto Rico) v. Rodriguez Perez*, 2005 WL 114080, at *5 (D.P.R. Jan. 20, 2005)

The Court can now turn to the merits of Costco's motion for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citation and internal quotation marks omitted).

The moving party, in this Costco, bears the initial burden to demonstrate the lack of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. To defeat summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. *Id*. If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *Id*. at 248.

## III.    Factual Findings

Taking all disputed facts in the light most sympathetic to plaintiff, as the party opposing summary judgment, the Court makes the following factual findings, which are either undisputed or conclusively supported by the evidentiary record.[2]

Plaintiff Oquendo currently works at Costco as a Staff Level Manager. She began working for Costco on September 1, 2003, as a Marketing Clerk. Throughout her

---

(granting motion to strike defendants' replies because they were belatedly filed and filed without first obtaining leave from the court. The replies were not considered.)

[2] Pursuant to Local Rule 56, the Court will only deem as genuinely opposed those statements of material facts which the objecting party properly denied or qualified in strict compliance with Local Rule 56(c). The Court also credits only facts properly supported by accurate record citations. *See* Local Rule 56(e).

employment with Costco, Oquendo received copies of its Employee Agreements. Costco has policies prohibiting discrimination and retaliation and Oquendo was aware of such policies.

On August 29, 2005, Oquendo was promoted to Marketing Manager. A few months later, on December 8, 2008, she was again promoted to Front End Manager, a staff level position. Then, on October 4, 2010, Oquendo was assigned the position of Administrative Manager. On April 1, 2014, Oquendo was transferred to the position of Receiving Manager at the Caguas Warehouse.

As a Receiving Manager, Oquendo had a full-time management and leadership position. The essential duties of a Receiving Manager include: scheduling, developing, counseling and directing shipping and receiving personnel; making recommendations as to hiring, promotions, and termination of employees to the Warehouse Manager; drafting and participating in the presentation of employee reviews; and reviewing employee time cards. (Docket No. 26-13). The above duties constitute forty percent (40%) of the positions' essential duties. In addition, a Receiving Manager's essential duties include: overseeing security measures for warehouse access (ten percent (10%)); observing employees' paperwork and performance to ensure that proper receiving/shipping procedures are followed (ten percent (10%)); overseeing department maintenance and repair of fixtures and equipment and supply requisition (five percent (5%)); providing and ensuring prompt and courteous member service (ten percent (10%)); assisting in receiving duties and other areas of the department, as needed (twenty five percent (25%)); implementing and upholding safety procedures, and monitoring foot traffic to ensure route safety. *Id.* Moreover, the essential duties of a Receiving Manager require the following physical demands: bending, squatting, kneeling, reaching above the shoulders and below the shoulders, and lifting and carrying up to fifty (50) pounds. *Id.*

On February 8, 2016, Oquendo requested and was granted a medical leave under the Family Medical Leave Act ("FMLA") due to a serious health condition. The FMLA

---

The Court has disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

leave began retroactively on February 1, 2016 and concluded on February 17, 2016.

On March 17, 2016, Oquendo submitted to Costco a (first) medical certificate from Pavia Hospital, which indicated that: she was twelve (12) weeks pregnant; was admitted to the Hospital on March 14; remained under treatment until March 17, the date when she was discharged; and, could return to work on March 21. Through the submission of such medical certificate, Patrick Bergeron ("Bergeron"), the General Manager of the Caguas Warehouse, first learned of Oquendo's pregnancy.

On March 21, 2016, Oquendo submitted to Costco a (second) medical certificate from the Maternal Fetal Medicine and Gynecology Center, dated March 21, 2016, which stated that she was fourteen (14) weeks pregnant and had been admitted to Pavia Hospital on March 21, 2016. The medical certificate recommended that Oquendo be placed on rest until March 28, 2016. On April 7, 2016, Oquendo submitted to Costco a (third) medical certificate from the Maternal Fetal Medicine and Gynecology Center, dated April 7, 2016, which indicated that Oquendo had been under their professional care from March 29, 2016 until April 8, 2016, during which time she was totally incapacitated.

Pursuant to the abovementioned medical certificates, Costco extended Oquendo's FMLA leave—which was originally scheduled to expire on February 17, 2016—to April 8, 2016. By then, Oquendo had been released by her physician to go back to work and, as a result, she called Costco to inform that she was cleared to return to work. By April 11, 2016, Bergeron knew that Oquendo was released by her physician. According to Bergeron, he asked Oquendo if she was willing to take a one-week vacation leave at that time because the schedule for that week had already been prepared. Such vacation leave was paid to Oquendo in full. Furthermore, such vacation days were later restored to her, and, as such, her vacation leave balance remained unaltered.

According to Costco, this was a standard practice of the business to allow it to adjust its payroll and its schedule in the event of employees returning from leave. As part of their business practice, Costco prepares the employee's schedules 2 or 3 weeks in advance, and it is Costco's practice that if an employee is released from a leave of absence ("LOA") and he or she calls to return to work before the next schedule is

prepared, Costco asks the employee to take vacation time while Costco adjusts the payroll.

Oquendo returned to work on April 18, 2016 and was assigned to rotating shifts. That week she was specifically assigned the night shift because other managers were on vacation, the Warehouse was undergoing overnight renovations, and Human Resources trainings were being conducted, beginning at 5:00AM. For purposes of Oquendo's claims, the Staff Schedules for the relevant period—the week ending on May 17, 2015, to the week ending in June 26, 2016—show that prior to her pregnancy, the shifts assigned to Oquendo by Costco varied throughout the year. Specifically, Oquendo was assigned to work different schedules, which frequently included night shifts.

About a month later, on May 24, 2016, Oquendo met with Bergeron and expressed her concern regarding her work schedule. More specifically, Oquendo told Bergeron that the hours he was scheduling for her were too difficult for her to manage because of her pregnancy. During that meeting, Oquendo requested to work day shifts through the remainder of her pregnancy and Costco gave her a Work Restriction Form that she had to return to Costco after it had been completed by her doctor. As a result of the meeting, Bergeron temporarily assigned Oquendo to work the 8:00AM to 5:00PM shift until she returned the completed Work Restriction Form. According to Bergeron, Oquendo had been performing her job up to that point and had not complained about having any problem lifting things or having any other issue. Other Costco employees had been scheduled daytime schedules like the one requested by Oquendo.

On June 1, 2016, Oquendo visited her doctor, who in turn completed the Work Restriction Form that same day. On June 4, 2016, she gave Costco the Work Restriction Form filled out by her doctor. Bergeron met briefly with Oquendo on that same day. Also present at the meeting were Sheilla Birriel ("Birriel"), Payroll Clerk, and Patricia Sullivan ("Sullivan"), Assistant Warehouse Manager. During the meeting, Bergeron informed Oquendo that he would send the Work Restriction Form to the Human Resources Department at Costco and get back to her once he had a response from

Human Resources regarding the matter. While Costco evaluated the Work Restriction Form, Oquendo continued working the 8:00AM to 5:00PM shift.

The Work Restriction Form revealed that Oquendo's doctor imposed several restrictions on her physical capacity, specifically, it stated that she was: (1) limited to lifting or carrying objects that were less than ten (10) pounds; (2) restricted in reaching above her shoulders; (3) restricted in bending/stooping, twisting of the trunk, full squatting, partial squatting; and, (4) restricted in kneeling or climbing stairs. In addition, Oquendo's doctor recommended that she be assigned eight-hour shifts from 8:00AM to 5:00PM and to avoid night shifts.

The Work Restriction Form did not request any kind of leave for Oquendo. Bergeron testified during his deposition that the Work Restriction Form did not indicate that Oquendo could not return to work and did not specifically ask for a leave of absence.

After evaluating the restrictions imposed to Oquendo by her doctor, Costco concluded that she was unable to perform the essential duties of her position as a Receiving Manager. According to Bergeron, the Leave Department told him that the medical restrictions imposed on Oquendo did not allow her to work at any position at the warehouse at that time. Costco's Leave Department makes the decision to send an employee on leave. Costco's Leave Department at Corporate made the decision to place Oquendo on leave in June 2016.

As a result, on June 10, 2016, Bergeron and Sullivan met with Oquendo to discuss with her the work restrictions imposed upon her by her doctor in the Work Restriction Form. Bergeron and Sullivan explained to Oquendo that, given the severity of the restrictions imposed, there was no position available in the Warehouse that she could perform. After considering Oquendo's medical restrictions, Costco offered to place her on a LOA. According to Costco, it offered a LOA as an accommodation to Oquendo. She was granted time-off as a Pregnancy Disability Leave, beginning on June 11, 2016, which would conclude on September 18, 2016 (hereinafter referred to as the "June 2016 LOA"). This was a paid leave. During the above meeting, Birriel gave Oquendo the necessary documents to request Salary Continuation Benefits from UNUM Insurance

in connection with the June 2016 LOA.[3] In turn, Oquendo requested such benefits, resuming the benefits she had already received when she was on FMLA leave from February 8, 2016 to April 8, 2016. Oquendo was paid accordingly.

Oquendo did not speak directly with Costco Human Resources in any of her meetings with Bergeron.

The June 2016 LOA was originally scheduled to conclude on September 18, 2016. Nevertheless, after Oquendo gave birth, she requested and was granted additional time under the LOA for medical reasons.

While Oquendo was out on the June 2016 LOA, her position—Receiving Manager—was temporarily assigned to a Junior Manager, Mr. Carlos Tolentino ("Tolentino"), until she returned. Tolentino is a male employee in his mid-thirties. Tolentino performed the duties of a Receiving Manager.

Ultimately, Oquendo's June 2016 LOA, which was extended at her request, concluded in January 2017, at which time she returned to work at Costco. She returned to the same Receiving Manager position which she previously held and continued to receive the same benefits that she had before. Upon her return to work, Oquendo received a salary increase.

On June 17, 2016, Oquendo filed a discrimination charge against Costco before the Equal Employment Opportunity Commission ("EEOC") based on alleged sex and disability discrimination and retaliation.

Oquendo was, and presently is, a salaried Costco employee.

---

[3] Pursuant to Costco's Personal Medical Leave policy, if a salaried employee is going to be out of work for more than one (1) week due to a medical condition, Costco provides said employee with Salary Continuation Benefits. As such, Costco directly pays the first week of the employee's salary in full. In the event that the employee is required to be out of work for longer than one week, the employee must contact UNUM Insurance to initiate "Salary Continuation Benefits." UNUM Insurance is an insurance paid by Costco to provide salary continuation benefits to its employees. UNUM Insurance continues to pay salary benefits up to a maximum of twenty-six (26) weeks to Costco employees on extended leaves. During the first twelve (12) weeks of the twenty-six (26) day timeframe, Costco employees are paid one hundred percent (100%) of their salary. For the remaining thirteen (13) weeks, they are paid sixty percent (60%) of their salary.

     If an employee returns from a LOA and subsequently requests and is granted another LOA within 90 calendar days or less, the original LOA date will apply for purposes of determining the employee's available leave time and benefits.

## IV.    **Discussion**

In her complaint, Oquendo's chief argument is that Costco unlawfully discriminated and retaliated against her because of her gender, pregnancy, age and disability, by placing her on an "involuntary" LOA while she was pregnant, i.e., the June 2016 LOA. Oquendo claims that she wanted to, and could, continue working while pregnant, if only Costco had relieved her from the physical demands of her position. Oquendo also complains of differential treatment because she was pregnant, alleging that other employees were granted reasonable accommodations and continued to work, an option withheld from her because she was placed on a LOA.

Costco moves for summary judgment on all the claims asserted by Oquendo alleging that: (1) she cannot establish a *prima facie* claim of gender and pregnancy discrimination under Title VII; (2) she cannot establish a *prima facie* case of disability discrimination under ADA; (3) she failed to exhaust administrative remedies and cannot establish a *prima facie* case of age discrimination under ADEA; and (4) she cannot establish a *prima facie* case of retaliation under Title VII. Costco also moves for summary judgment on all supplemental claims under Puerto Rico law. The Court addresses each argument *seriatim*.

### A.    Pregnancy discrimination under Title VII

Title VII makes it an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 ("PDA") extended Title VII's protection against discrimination to specifically include discrimination "because of or on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 12 (1st Cir. 2011). The PDA thus clarified that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy. The PDA's second clause says that employers must treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id. Young v. UPS Inc.,* 575 U.S. 206 (2015).

Oquendo filed this action claiming that Costco discriminated against her because of her pregnancy by placing her on an "involuntary" LOA in June 2016 rather than accommodating her pregnancy-related restrictions.

Where, as here, there is no direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden shifting framework to determine whether Oquendo can prove intentional discrimination under Title VII. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The initial burden falls upon the plaintiff to establish a *prima facie* case of pregnancy discrimination. Oquendo must therefore show that: (1) she was pregnant or indicated an intention to become pregnant; (2) she was qualified for her position and/or performed her job satisfactorily; (3) the employer took an adverse employment action against her; and (4) the employer continued to have her duties performed by a comparably qualified person. *See Smith v. F.W. Morse & Co.,* 76 F.3d 413, 421 (1st Cir. 1996); *Medina v. Adecco*, 561 F.Supp.2d 162, 168-69 (D.P.R. 2008). The First Circuit has described meeting the initial *prima facie* case as "not especially burdensome" and "not onerous." *Greenberg v. Union Camp Corp.,* 48 F.3d 22, 26 (1st Cir. 1995); *Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir. 2003).

Plaintiff's satisfaction of her *prima facie* burden creates a rebuttable presumption that discrimination prompted the challenged adverse employment action. *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 153 (1st Cir. 1990). Defendant may rebut this presumption by articulating a nondiscriminatory reason for the adverse employment action, which eliminates the presumption and shifts the burden back to Plaintiff. *Smith,* 76 F.3d at 421. Plaintiff must then point to sufficient evidence to demonstrate that the employer's proffered reason is a mere pretext and that the true reason is discriminatory. *Id*.

Under the *McDonnell Douglas* framework, Oquendo must first establish the *prima facie* elements for her pregnancy discrimination. Turning to the specific facts of this case, Costco concedes that Oquendo satisfies the first element of her *prima facie* case because she was pregnant. Costco however claims that Oquendo cannot satisfy the second, third or fourth elements and, therefore, her pregnancy discrimination claim

fails. On her part, Oquendo omits any discussion of the *prima facie* elements, which she is required to prove at the first step of the *McDonnel Douglas* framework.

As to the second element of plaintiff's *prima faci*e case, whether she was qualified for her position and whether she could perform her job satisfactorily, Costco claims that Oquendo was temporarily not qualified to perform her job as a Warehouse Manager because the work restrictions imposed by her physician when she was pregnant prevented her from performing essential duties of her position. The uncontested record proves that Costco is correct.

It is undisputed that Costco specifically described the essential and non-essential duties of a Receiving Manager in a document titled "Job Analysis." (Docket No. 26-13). It is also uncontested that the essential duties of a Receiving Manager included, amongst others, assisting in receiving duties and other areas of the department, as needed, and implementing and upholding safety procedures and monitoring foot traffic to ensure route safety. *Id*. Moreover, the undisputed record shows that the *essential* duties of a Receiving Manager required the following physical demands: bending, squatting, kneeling, reaching above the shoulders and below the shoulders, and lifting and carrying up to fifty (50) pounds. *Id*. It is not surprising therefore that during Oquendo's deposition, when she was asked how much physical work she performed as a Receiving Manager, she answered: "*all the work is physical*." (Docket No. 26-2 at 12). She also stated during her deposition that as part of her duties she lifted boxes that weighed ten or more pounds. *Id*.

The undisputed record also shows that in the Work Restriction Form, dated June 1, 2016, Oquendo's physician imposed several medical restrictions on her physical ability to work because of her pregnancy. Such restrictions were unequivocal and specifically stated that Oquendo was restricted: (1) to lifting/carrying no more than ten (10) pounds; (2) in reaching above her shoulders; (3) in bending/stooping, twisting of the trunk, full squatting, partial squatting; and, (4) in kneeling or climbing stairs. On this record, such medical restrictions are undisputed. As discussed above, bending, squatting, kneeling, reaching above the shoulders and below the shoulders, and lifting and carrying up to fifty (50) pounds were—on this record and at this stage—*essential*

duties of a Receiving Manager. Oquendo could *not* lift or carry more than ten (10) pounds and her position required her to lift and carry up to fifty (50) pounds. Furthermore, Oquendo could *not* reach above her shoulders, bend, twist her trunk, squat or kneel—all of which were physical requirements of her position.

Given this evidence, therefore, no reasonable factfinder could conclude that Oquendo could perform the essential physical duties of her position during the relevant period. Furthering such conclusion is the fact that Oquendo did not point to *any* evidence of record to show otherwise. Based on the foregoing, because Oquendo could *not* perform the requirements of her position during her pregnancy—as a result of her medical restrictions—the Court cannot find that she was *qualified* for her position—even if it was only temporary. Accordingly, Oquendo cannot meet the second *prima facie* element for a Title VII pregnancy discrimination claim.

While the Court needs not run through the remaining *prima facie* elements, Oquendo fares no better proving that she suffered an adverse employment action—the third element of her *prima facie* case. An adverse employment action "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012) citing *Morales Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010). "A materially adverse change in terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Whether an employment action is materially 'adverse'—and therefore actionable under Title VII—[is] gauged by an objective standard." *Id.*

In the present case, after evaluating the medical restrictions imposed on Oquendo during her pregnancy, Costco determined that given the severity of the restrictions, there was no position available in the warehouse that she could perform, including her own position.[4] Costco therefore offered to place her on the June 2016 LOA, as an accommodation. Oquendo was granted time-off as a Pregnancy Disability Leave, beginning on June 11, 2016. While the June 2016 LOA was scheduled to conclude on

---

[4] Oquendo did not point to any evidence to challenge this assertion.

September 18, 2016, Oquendo voluntarily requested to extend the leave and Costco granted such request. This was a paid leave. Oquendo nevertheless claims that the June 2016 LOA constitutes an adverse employment action. Her argument is unavailing.

In the Court's view, granting Oquendo the June 2016 LOA as a temporary accommodation given the undisputed record of this case far from constitutes an adverse employment action. Here, Oquendo was not terminated by Costco. In fact, she continues to be employed by Costco today. She was not demoted nor reassigned to a lesser position, nor have her responsibilities suffered any adverse change. Furthermore, neither Oquendo's salary nor benefits have been adversely affected. In effect, the June 2016 LOA was a fully paid leave and once she returned to work upon the expiration of the leave she received an *increase* in her salary. For an employment action to be materially "adverse" it must be "more disruptive than a mere inconvenience" and, on this record, no reasonable factfinder could find that the June 2016 LOA involved a discrete or materially "adverse" change in the terms and conditions of Oquendo's employment. *See Morales-Vallellanas*, 605 F.3d 27. Accordingly, the June 2016 LOA is not an actionable adverse employment action under Title VII and, therefore, Oquendo failed to meet the third prong of the *prima facie* case.[5]

---

[5] Plaintiff's other two alleged—and lesser—"adverse" employment actions fare no better. First, Oquendo claims that she was "forced" to take vacation time for a week after she asked to return from a medical leave in April 2016. Costco presented a legitimate and uncontested reason for this action, which seems to be part of Costco's business practice for *all* employees. Plaintiff admitted that Costco prepares the schedule two to three weeks in advance. Plaintiff also admitted that Costco has a practice of asking its employees to take vacation time while it adjusts payroll if the employee is released from leave before the next schedule is prepared. That was the case here. When Oquendo announced to Costco that she was released to return to work following her April leave, Costco had already prepared the work schedule and needed to adjust payroll in order for her to start. As it typically does with other employees, Costco asked Oquendo if she was willing to take a one-week vacation leave to adjust payroll. Oquendo does not dispute that. Such action, under *different* circumstances, perhaps could adversely affect the terms and conditions of employment, however, that was not the case here. The record here shows that Oquendo was *not* adversely affected by this action in her employment. In pertinent part, neither her salary nor benefits were adversely affected by this action because the vacation time she used was paid to her in full and the time was later *restored* to her, thereby maintaining her prior leave balance unaffected.

Second, Oquendo claims that she was subjected to an adverse employment action in April 2016 because when she returned from leave Bergeron scheduled her rotating shifts, mostly night shifts, including 1:00AM shifts. On this record, however, it is uncontested that *prior* to Oquendo's pregnancy, her shifts *varied* throughout the year and she was assigned to *different* schedules, which frequently *included* night shifts, like the one she complained of here. In addition, Costco set forth an uncontested legitimate business reason for appointing her a night shift in April 2016, to wit, that other managers were on vacation at that time, the Warehouse was undergoing overnight renovations, and Human Resources trainings were being conducted, beginning at 5:00AM. Under this scenario, scheduling Oquendo for a

Based on the foregoing, Oquendo's Title VII discrimination claim cannot prevail because she failed to meet the second and third elements of her *prima facie* case. And, though the Court need not run through the rest of the burden-shifting framework, on its face, and absent any evidence to the contrary, Costco's business decisions relating to Oquendo's employment cannot be found to have been discriminatory. Moreover, any business decision made by Costco regarding Oquendo's employment, and the June 2016 LOA, has been legitimately explained by Costco, and no proof has been provided by Oquendo that Costco took an action against her that goes against Title VII. Finally, though the Court certainly does not have to reach the pretext stage, there is not an inkling of evidence on this record to show that Costco's actions against Oquendo involve discriminatory work practices or that the reasons behind them were mere pretext to discriminate against her because of her pregnancy—or any other protected category.

In sum, Oquendo fails to meet her *prima facie* burden with respect to her pregnancy discrimination claim under Title VII. Costco is therefore entitled to summary judgment on such claim. Accordingly, Oquendo's Title VII discrimination claim is **DISMISSED with prejudice**.

a.    *Puerto Rico Law 3: pregnancy discrimination claim*

Oquendo also brings a claim for pregnancy discrimination under Puerto Rico Law 3. Costco moves to dismiss this claim because Oquendo cannot show that Costco dismissed her, suspended her, reduced her salary, or discriminated against her in any manner because of her pregnancy. Oquendo did not offer a response to Costco's dismissal request. The Court agrees with Costco that dismissal is warranted.

Law 3 protects employees from pregnancy-related employment discrimination. *See* P.R. Ann. tit. 29 § 469. The statute makes employers liable if they "dismiss[ ], suspend[ ], reduce[ ] the salary or discriminate[ ] in any manner against a pregnant woman worker . . . ." *Id*. The statute specifically provides that employers "cannot,

---

rotating shift, which included night shifts, both of which had been previously held by Oquendo, cannot be found to have adversely affected her employment—she was not demoted nor were her responsibilities or terms of employment altered in an adverse way.

     Based on the record of this case, neither of these two actions involved a discrete or materially "adverse" change in the terms and conditions of Oquendo's employment. As such, they do not rise to the level of actionable adverse employment actions under Title VII.

without just cause, discharge a pregnant woman." *Id*. Once a woman files suit indicating that she was subject to any of the discriminatory acts prohibited by Law 3, a rebuttable presumption arises and the burden shifts to the employer to prove that its actions were justified. *Colon-Muriel v. Asoc. de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio*, 499 F. Supp. 2d 98, 112 (D.P.R. 2007); *Rivera Aguila v. K–Mart de P.R.,* 123 D.P.R. 599, 610 (1989). "Courts analyze discrimination claims under Law [ ] 3 . . . like a Title VII discrimination cause of action." *Pagán–Alejandro v. P.R. ACDelco Serv. Ctr., Inc.*, 468 F. Supp. 2d 316, 328 (D.P.R. 2006) (internal citation omitted).

Because courts analyze discrimination claims under Law 3 like a Title VII discrimination claim, the Court borrows from its Title VII analysis to quickly dispose of Oquendo's analogous Law 3 claim. As discussed above, the alleged discriminatory conduct that Oquendo complains about did not adversely affect her employment. On this record, Oquendo failed to show that Costco dismissed her, suspended her, reduced her salary or benefits or discriminated against her because of her pregnancy. As discussed above: Oquendo was never terminated—indeed she presently works at Costco; Costco never suspended her or changed her responsibilities—she returned to her prior position with the same duties; Costco never reduced her salary or benefits—indeed she received a salary increase upon her return to work. Furthermore, there is no evidence on this record to show that Costco discriminated against Oquendo in any manner because she was pregnant.

Plainly, there is no evidence on this record of the type of adverse employment action needed for Oquendo to have a cognizable claim under Law 3. Oquendo's Law 3 claim therefore cannot survive. And, as further discussed above, Costco adequately explained its business reasons with respect to the actions that Oquendo complains of. Moreover, Oquendo did not show discriminatory intent based on her pregnancy. Based on the foregoing, Costco is entitled to summary judgment on Oquendo's Puerto Rico Law 3 claim and, therefore, such claim is **DISMISSED with prejudice**.

    b.    *Disparate treatment claim*

In addition to the above claims, Oquendo also asserted a disparate treatment claim under Title VII based on pregnancy discrimination. Oquendo grounds her disparate treatment claim on her allegation that similarly situated pregnant and non-pregnant employees were treated more favorably by Costco than her. More specifically, she avers that Costco granted other—unknown—managers special schedules as reasonable accommodations, instead of offering them LOAs—which is what they offered to her. Oquendo's disparate treatment claim is unavailing for various reasons.

In the present case, as in all cases in which an individual plaintiff seeks to show disparate treatment through indirect evidence, the plaintiff has "the initial burden" of "establishing a *prima facie* case" of discrimination. *See McDonnell Douglas,* 411 U.S. at 802; *Young,* 575 U.S. at 210–11. If she carries her burden, the employer must have an opportunity "to articulate some legitimate, non-discriminatory reason[s] for" the alleged difference in treatment. *Ibid.* If the employer articulates such reasons, the plaintiff then has "an opportunity to prove by a preponderance of the evidence that the reasons . . . were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

By now, the Court has sufficiently explained that Oquendo failed to meet her initial burden of establishing a *prima facie* case of pregnancy discrimination, therefore, she cannot establish a claim for disparate treatment under Title VII. Though Oquendo did not meet her initial burden, her claim moreover fails for the following reasons.

Oquendo attempts to show that Costco discriminated against her by placing her on the June 2016 LOA because "other employees" (presumably those similarly situated to her) were provided modified work schedules—an opportunity withheld from her. A "claim of disparate treatment based on comparative evidence must rest on *proof* that the *proposed analogue is similarly situated in material respects.*" *See Perkins v. Brigham & Women's Hosp.,* 78 F.3d 747, 751 (1st Cir. 1996). (Emphasis added). In the present case, Oquendo failed to provide specific evidence who these mystery employees were, what their alleged accommodation was, under what circumstances where they allegedly granted accommodations, and how such employees were similarly situated to her.

Furthermore, Oquendo conceded that she does *not* know if those alleged Costco employees—who are unnamed, but who she claims were provided schedule changes— had the same medical restrictions that she had. In fact, Oquendo accepted that she does *not* know "anyone" who had the same medical restrictions that she had. That is all fatal to her disparate treatment claim.

On this evidentiary record, there is not an inkling of evidence of *any* employee analogous to Oquendo, nor is there evidence as to how the purportedly analogous employee was similarly situated to Oquendo in material respects. That being the case, the Court cannot find that Oquendo was a victim of disparate treatment. Plaintiff's disparate treatment claim falls well short of staving off summary judgment and shall therefore be **DISMISSED with prejudice**.

B.    The ADA claim

Oquendo also brings a claim of disability discrimination under the ADA claiming that she was temporarily disabled because of her pregnancy and thatCostco discriminated against her by failing to reasonably accommodate her disability. The ADA forbids a covered employer (like Costco) from discriminating against a "qualified individual," *see* 42 U.S.C. § 12112(a), pertinently defined as a person "who, with or without reasonable accommodation, can perform the essential functions" of her job, *see id*. § 12111(8). *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 454 (1st Cir. 2016). Failing to reasonably accommodate a disabled person is a form of disability discrimination. *Id. See e.g., Faiola v. APCO Graphics, Inc.*, 629 F.3d 43, 47 (1st Cir. 2010).

To survive summary judgment on a failure to accommodate claim, a plaintiff must point to sufficient evidence showing that: (1) she is disabled within the ADA's definition; (2) she could perform the job's essential functions either with or without a reasonable accommodation; and (3) the employer knew of her disability yet failed to reasonably accommodate it. *Lang,* 813 F.3d at 454. *See e.g., Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003). Costco maintains that Oquendo cannot make out a *prima facie* case of disability discrimination under the ADA and therefore such claim should be

summarily dismissed.[6] On her part, Oquendo did not offer any discussion to show that she met her *prima facie* burden. She nevertheless broadly claimed that she had a temporary pregnancy-related disability and that Costco placed her in an "involuntary" LOA rather than providing her with a reasonable accommodation.

Turning to the first *prima facie* element, the Court will assume, without deciding, that Oquendo had a disability within the meaning of the ADA. For purposes of this discussion, therefore, Oquendo met the first prong.

As for the second element—the essential functions' issue—Oquendo had to show that she *could* perform the *essential* duties of her position, either *with or without a reasonable accommodation*. Costco argues that Oquendo's medical restrictions limited her in such a way that she could *not* perform some of the essential duties of her position, with or without an accommodation. In response, Oquendo argues that because her physician "released" her to go back to work in June 2016, she "could" work. But Oquendo appears to omit a key fact: while her doctor indeed gave her approval to work, he imposed several restrictions on her physical capabilities. And, as discussed in this Opinion, on this evidentiary record and at this stage, bending, squatting, kneeling, reaching above the shoulders and below the shoulders, and lifting and carrying up to fifty (50) pounds are all *essential* duties of Oquendo's position but, because of her medical restrictions, she could *not* perform them.[7]

Oquendo nevertheless claims that she would have been able to do her job, had Costco granted her a reasonable accommodation. She bears the burden of showing that she could perform the essential functions of her position, if only Costco had given her some reasonable accommodation for her pregnancy-related restrictions. *See Lang*, 813 F.3d at 454; *See Jones v. Walgreen Co.,* 679 F.3d 9, 17 (1st Cir. 2012). Oquendo, in turn, claims that Costco could have reasonably accommodated her by either: (1) redistributing non-essential duties or altering how the physical essential duties were performed;

---

[6] Costco grounds its *prima facie* discussion on the four elements set forth in *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir. 1999). The Court however relies on the *prima face* prong announced more recently in *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 454 (1st Cir. 2016).

[7] The Court notes that the First Circuit has stressed that the ADA does not require employers to retain disabled employees who *cannot* perform the essential functions of their jobs without reasonable accommodation. *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649 (1st Cir. 2000).

(2) providing her a modified work schedule; or (3) temporarily reassigning her to a "light" duty position. Costco challenges all three of the proposed accommodations as unfeasible in this case and argues that an employer is neither required to provide an employee with an accommodation of her choice nor to create a new position for that employee. *See Enica v. Principi*, 544 F.3d 328, 342 (1st Cir. 2008). The Court agrees. As will be discussed, neither of the three accommodations proposed by Oquendo constitute "reasonable accommodations" within the meaning of the ADA.

At the outset, an employer is not obligated to provide an employee the accommodation she requests or prefers, the employer need only provide some reasonable accommodation. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *Schmidt v. Methodist Hospital*, 89 F.3d 342, 344-45 (7th Cir. 1996). To prove "reasonable accommodation," a plaintiff needs to show not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances. *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260 (1st Cir. 2001). This is where Oquendo's argument falls short.

Turning to Oquendo's first proposition, she claims that Costco could have reassigned the Receiving Manager's physical duties—which she could *not* perform—to *other* employees, thereby enabling her to work but *solely* performing the administrative (non-physical) tasks of the position. Oquendo's first proposed accommodation—excusing her from the physical demands of her *essential* duties—is a non-starter for a simple reason. *See Lang,* 813 F.3d at 455-56. Just like the plaintiff in the *Lang* case, what Oquendo really wanted was for Costco to *excuse* her from having to perform *essential* functions of her position and basically create a new position for her where all her "physical" *essential* duties were eliminated. "But under the ADA, an employer is *not* required to accommodate an employee by *exempting* her from having to discharge an *essential* job function." *Id. See e.g. Richardson v. Friendly Ice Cream Corp.,* 594 F.3d 69, 81 (1st Cir. 2010); *see also Mulloy v. Acushnet Co.,* 460 F.3d 141, 153 (1st Cir. 2006) (explaining that a proposed accommodation that "redefin[ed]" an employee's job description is "per se unreasonable").

Many times has the First Circuit rejected propositions like the one Oquendo makes in this case: that employers must accommodate employees by *exempting* them from performing *essential* duties of their position. This Court will not suggest that Costco was required to accommodate Oquendo in the manner that she proposes because the requested accommodation would have *altered* her essential job functions, which courts have found to be "per se unreasonable." *Id.* Furthermore, on its face, Oquendo's first proposed accommodation would *not* have enabled her to perform the *essential* duties of her position—some of which undisputedly she could *not* perform—nor was it feasible. Based on the foregoing, the Court cannot find that the first proposed accommodation constituted a "reasonable accommodation." *Reed*, 244 F.3d at 260.[8]

As for Oquendo's second suggested accommodation—that Costco should have authorized a modified work schedule for her—Oquendo claims that Costco could have granted her a modified work schedule during her pregnancy, and more specifically, appointed her to an 8:00AM to 5:00PM shift. Oquendo bases her argument on Bergeron's statement during his deposition that Costco has offered modified work schedules as reasonable accommodations to certain employees in particular situations. Oquendo also points to Bergeron's declaration that he could authorize a modified work schedule for an employee on a temporary basis under specific circumstances. Under the circumstances of this case, however, assigning Oquendo a modified work schedule of 8:00AM to 5:00PM—which is what she wanted—is also a non-starter because it would *not* have resolved the medical restrictions imposed by her doctor.

There is simply no evidence in the record that Oquendo *could* perform the *essential* duties of her position had she been granted a modified work schedule. In Oquendo's case, a modified work schedule could *not* have been provided by Costco because her medical restrictions, which severely limited her physical abilities, barred her from being able to perform the *essential* duties of her position—*irrespective* of the work schedule imposed. Her medical restrictions were a significant factor that played into *any* schedule offered to her. It was therefore not feasible for Costco to assign a

---

[8] While it is true that in some cases, as Costco itself recognizes, an employer *could* modify an employee's *non-essential* tasks to accommodate an employee, in this case, Oquendo was unable to perform some of her *essential* duties, which the employer is not required to discharge.

modified work schedule as a reasonable accommodation to Oquendo because she could *not* perform the essential duties of her position on *any* schedule, whether it was the 8:00AM to 5:00PM shift she coveted or any other. Accordingly, the Court cannot find that the second proposed accommodation constituted a "reasonable accommodation." *Reed*, 244 F.3d at 260.

Turning to Oquendo's last proposed accommodation, she claims that Costco could have provided her a temporary reassignment to another position as a reasonable accommodation. A "[r]easonable accommodation may include reassignment to a *vacant* position" but the *employee "bears the burden of proof in showing that* such *a vacant position exists." Phelps v. Optima Health, Inc.,* 251 F.3d 21, 27 (1st Cir. 2001) (internal quotations and citations omitted)). (Emphasis added). *See Lang*, 813 F.3d at 456. An employer may be obligated to reassign a disabled employee, but only to *vacant* positions; an employer is not required to "bump" other employees to create a vacancy to be able to reassign the disabled employee. *Id.* Nor is an employer obligated to create a "new" position for the disabled employee. Furthermore, the ADA may only require an employer to reassign a disabled employee to a position for which the employee is *otherwise qualified. White v. York Int'l Corp.,* 45 F.3d 357, 362 (10th Cir. 1995).

In this case, the Court can easily dispose of Oquendo's third proposed accommodation because she failed to meet her evidentiary burden. She neither argued nor presented any evidence of the existence of a vacant position to which Costco could have reassigned her during the relevant period. Plainly, there is not an iota of evidence on this record showing that a *vacant* position existed at the warehouse for which Oquendo was qualified. Given this total lack of evidence, Oquendo's final proposed accommodation is not a "reasonable accommodation." *Reed*, 244 F.3d at 260.

In summary, neither of the three accommodations that Oquendo proposed where "reasonable" or feasible, as required by the ADA. Despite Oquendo's burden to come forward with evidence to show that she *could* perform the essential duties of her position had she been granted a reasonable accommodation, she failed to meet such threshold.[9]

---

[9] This case, like many cases on essential functions and reasonable accommodation before the First Circuit, "turn[s] on the surprising failure of one party or the other to proffer any significant evidence in favor of

*See Ward v. Massachusetts Health Research Inst., Inc.,* 209 F.3d 29, 35 (2000). The Court can therefore easily conclude that Oquendo's ADA claim fails because she did not meet the second element of her *prima facie* case. *See e.g. Lang* 813 F.3d at 458 (concluding that plaintiff's disability discrimination claim failed because the summary judgment record did not show that she could perform the essential function of her job—manually lifting up to 60 pounds—with or without a reasonable accommodation. Plaintiff's discrimination claim was dismissed at the *prima facie* stage.)

Based on the preceding discussion, Oquendo's disability discrimination claim and failure to accommodate claim under the ADA cannot survive summary judgment and shall be **DISMISSED with prejudice**.

   a.   *Puerto Rico Law 44: disability discrimination claim*

In her complaint, Oquendo also asserts a disability discrimination claim under Puerto Rico Law 44. Costco argues that Oquendo's claim under Law 44 should be dismissed on the same grounds as her ADA claim. Oquendo did not offer any response to this argument.

Puerto Rico Law 44 was initially enacted to prohibit discrimination against disabled individuals by any public or private institution that received funds from the Commonwealth of Puerto Rico. P.R. Laws Ann., tit. 1, § 504. Following the promulgation of the ADA, Puerto Rico's Legislature approved Law 105 of December 20, 1991 with the express purpose of extending Law 44's protection to persons employed by private institutions in Puerto Rico and to conform Law 44 to the ADA. *Arce v. ARAMARK Corp.,* 239 F. Supp. 2d 153, 168–69 (D.P.R. 2003). Law 44 was modeled after the ADA. *Id.* It was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA. The elements of proof for a claim under Law 44 are essentially the same as for a claim under the ADA. *Zayas v. Commonwealth of P.R.*, 378 F. Supp. 2d 13, 23–24 (D.P.R. 2005); *Roman–Martinez v. Delta Maint. Serv., Inc.*, 229 F. Supp. 2d 79, 85 (D.P.R. 2002).

their position." *Reed v. LePage Bakeries,* 244 F.3d 254, 260 (1st Cir. 2001). *Tobin v. Liberty Mut. Ins. Co.,* 433 F.3d 100, 107 (1st Cir. 2005).

Having found that Oquendo failed to establish a valid claim under the ADA because she failed to meet the requisite elements of a *prima facie* claim, and having dismissed such claim as a result, Oquendo's claim under Law 44—which has essentially the same elements of proof as an ADA claim—should suffer the same fate. *See Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 74 n. 8 (1st Cir. 2002) (affirming dismissal of coterminous claim under Law 44 upon dismissal of ADA claim); *Acevedo Lopez v. Police Dep't of P.R.,* 247 F.3d 26, 29 (1st Cir. 2001) ("the Commonwealth prohibits employment discrimination on the basis of disability in a similar fashion as the ADA"); *Zayas*, 378 F. Supp. 2d at 24 (having found that plaintiff's ADA claim should be dismissed, the Law 44 claim should be dismissed as well); *Arce*, 239 F. Supp. 2d at 169 (finding that plaintiff's Law 44 should likewise be dismissed inasmuch as his ADA claim was dismissed).

Accordingly, as the Court dismissed Oquendo's ADA claim, her coterminous Puerto Rico Law 44 claim shall be **DISMISSED with prejudice** as well.

C.     The ADEA claim

Under the ADEA, an employer may not "discharge . . . or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her age." 29 U.S.C. § 623(a)(1). A plaintiff asserting a claim under the ADEA has the burden of establishing "that age was the 'but-for' cause of the employer's adverse action." *See Acevedo-Parrilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128, 138 (1st Cir. 2012) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009)). Differently stated, the plaintiff's age must have been *the* determinative factor as opposed to merely *a* determinative factor in the employer's decision. *Gross*, 557 U.S. at 168. Where, as here, there is no direct evidence of discrimination, courts evaluate ADEA claims under the burden-shifting framework drawn from *McDonnell Douglas, supra*. Under this framework, plaintiff must make out a *prima facie* case of discrimination, which requires the plaintiff to show that: 1) she was at least 40 years old at the time of the challenged action; 2) she was qualified for the position she had held; 3) the employer took adverse employment action against her, and 4) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's

services. *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 447 (1st Cir. 2009); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

As for Oquendo's alleged ADEA claim, the Court need not say more because the claim can easily be disposed of on administrative exhaustion grounds. Before bringing an age discrimination claim to federal court under ADEA, Oquendo had to exhaust her administrative remedies. *Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 78 (1st Cir. 2016). *See Jorge v. Rumsfeld,* 404 F.3d 556, 561 (1st Cir. 2005) (citing 29 U.S.C. § 626(d)); *see also generally Kale v. Combined Ins. Co.,* 861 F.2d 746, 751–52 (1st Cir. 1988) (noting that the administrative charge-filing requirement is *mandatory*, though not jurisdictional). Oquendo filed an administrative charge with the EEOC but did *not* mention *age* discrimination in her charge; she alleged only pregnancy and disability discrimination and retaliation. Oquendo rightly concedes as much.

Given Oquendo's fatal failure to exhaust administrative remedies on her age discrimination action, her ADEA claim does not belong in federal court—which compels the Court to dismiss such claim. *See Martinez-Rivera*, 812 F.3d at 78. Reaching the merits of Oquendo's ADEA claim also leads to the same conclusion. In terms of legal substance, Oquendo fares no better because she cannot meet her *prima facie* burden. As extensively discussed throughout this Opinion, Oquendo has not produced sufficient evidence to allow a reasonable fact-finder to conclude that she was qualified for the position that she held—the second prong of the *prima facie* case—or that Costco took an adverse employment action against her—the third prong of the test.

Accordingly, Costco is entitled to summary judgment on Oquendo's ADEA claim, which will be **DISMISSED with prejudice**.

a. *Puerto Rico Law 100: age and sex discrimination claim*

In her complaint, Oquendo also asserts an age and sex discrimination claim under Puerto Rico Law 100. Costco argues that Oquendo's claims under Law 100 are time-barred by the one-year statute of limitations and should therefore be dismissed. Oquendo failed to address this argument in her opposition.

Law 100 is Puerto Rico's general employment discrimination statute. P.R. Laws Ann. tit. 29, § 146. In pertinent part, the statute bans employment discrimination on

the basis of age and sex. *See* P.R. Laws Ann. tit. 29, § 146. The Supreme Court of Puerto Rico has held that the one-year statute of limitations found in Article 1868 of the Puerto Rico Civil Code applies to Law 100 claims. *Vargas v. Fuller Brush Co. of Puerto Rico*, 336 F. Supp. 2d 134, 143 (D.P.R. 2004), *report and recommendation adopted* (Sept. 8, 2004) referencing *Olmo v. Young & Rubicam of P.R., Inc.,* 110 P.R. Dec. 740 (P.R. 1981); *Matos Ortiz v. Commonwealth of Puerto Rico,* 103 F. Supp. 2d 59, 63–64 (D.P.R. 2000). A cause of action under Law 100 accrues on the date that the employee becomes aware of the adverse personnel action either through notification by the employer, *see American Airlines v. Cardoza–Rodriguez,* 133 F.3d 111, 124–125 (1st Cir. 1998), or the effectuation of the decision. *See Landrau–Romero v. BPPR,* 212 F.3d 607, 615 (1st Cir. 2000) ("Law 100 . . . has a statute of limitations of one year") (citing *Iglesias v. Mut. Life Ins. Co. of N.Y.*, 156 F.3d 237, 240 (1st Cir. 1998)).

Additionally, the filing of a discrimination charge with the EEOC or locally with the Anti-Discrimination Unit of the Puerto Rico Department of Labor constitutes an extrajudicial claim, which could toll the statute of limitations. *See León–Nogueras v. U.P.R.,* 964 F. Supp. 585, 587–88 (D.P.R. 1997). Once the plaintiff has filed such a claim and has notified the employer-defendant of its filing, the one-year statute of limitations under Law 100 is tolled throughout the duration of the administrative proceedings and until the employer-defendant is notified of the agency's decision. *See Vargas*, 336 F. Supp. 2d at 143; *Padilla Cintrón v. Rosselló,* 247 F. Supp. 2d 48, 55–56 (D.P.R. 2003).

In this case, the chief adverse employment action alleged by Oquendo is that she was placed on a LOA, beginning on June 11, 2016. She also claimed that she suffered two adverse employment actions in April 2016. Viewing the claims in the light most favorable to plaintiff, the Court takes the latter date—June 2016—to determine when her Law 100 claim accrued. Because a Law 100 claim accrues on the date that the employee becomes aware of the adverse personnel action or the effectuation of the decision, using the latter date, Oquendo's claim accrued on June 11, 2016—the date in which her LOA began. It is undisputed that Oquendo neither filed a charge of discrimination with the EEOC nor a charge with its Puerto Rico counterpart; therefore, the one-year statute of limitations was *not* tolled in this case. Oquendo had until June

2017 to file a claim under Puerto Rico's Law 100. She nevertheless filed it on October 8, 2017, several months *after* the statutory period had expired. As such, Oquendo's claim under Law 100 is time barred and its dismissal is warranted.

Notwithstanding the above, Costco offered an alternative argument in favor of dismissing Oquendo's Law 100 claim—that she failed to meet her *prima facie* burden. In cases like this one, where there is no direct evidence of discrimination, a plaintiff may rely on circumstantial evidence to prove a Law 100 claim through the "just cause" framework set in Article 3 of the statute. *Hoffman-Garcia v. Metrohealth, Inc.*, No. CV 14-1162 (PAD), 2018 WL 671200, at \*5 (D.P.R. Jan. 31, 2018), *aff'd,* 918 F.3d 227 (1st Cir. 2019). The framework consists of three stages: (1) a *prima facie* case; (2) burden shifting; and (3) ultimate demonstration of discrimination. *See, Caraballo-Cecilio v. Marina PDR Tallyman LLC*, 2016 WL 6068117, \*2 (D.P.R. Oct. 13, 2016) (describing framework). A plaintiff establishes a *prima facie* case by demonstrating that: (1) she suffered an adverse employment action; (2) the adverse action lacked just cause; and (3) there exists some basic fact substantiating the type of discrimination alleged. *See Rodríguez v. Executive Airlines, Inc., et al.*, 180 Fed. Supp. 3d 129, 132-133 (D.P.R. 2016) (setting forth elements of *prima facie* case under Law 100). In Puerto Rico, the term "just cause" is construed by reference to Puerto Rico Law 80. *Id.*

Reaching the merits of Oquendo's Law 100 sex and age discrimination claim, Oquendo fares no better because she cannot meet her *prima facie* burden. As broadly explained by the Court in this Opinion, Oquendo cannot meet the first prong of the Law 100 *prima facie* test because she has not produced sufficient evidence to show that Costco took an adverse employment action against her.

For the foregoing reasons, Costco's request for summary judgment on this action should be **GRANTED** and the claim is **DISMISSED with prejudice.**

>       D.      Retaliation claim under Title VII

Oquendo further asserts a claim of retaliation under Title VII. Title VII makes it

unlawful for an employer to retaliate against an employee because the employee has

taken an action to enforce her rights under Title VII. 42 U.S.C. § 2000e. Pursuant to

Title VII:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees . . .
> for an employment agency . . . because he has opposed any
> practice made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified,
> assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). When, like here, there is no direct evidence of retaliation, the

*McDonnell Douglas* burden-shifting framework is triggered. To make a *prima*

*facie* showing of retaliation, the plaintiff must show that: (1) she engaged in protected

conduct under Title VII, (2) she suffered an adverse employment action, and

(3) the adverse action was casually connected to the protected activity. *Ponte v. Steelcase*

*Inc.,* 741 F.3d 310, 321 (1st Cir. 2014); *Collazo v. Bristol–Myers Squibb Mfg.,*

*Inc.,* 617 F.3d 39, 46 (1st Cir. 2010).

"An employee has engaged in activity protected by Title VII if she has either (1)

'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made

a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing' under Title VII." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32

(1st Cir. 2009) (citing *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996)

(*quoting* 42 U.S.C. § 2000e–3(a))). "The term 'protected activity' refers to action taken to

protest or oppose *statutorily prohibited discrimination.*" *Fantini*, 557 F.3d at 32 citing

*Cruz v. Coach Stores Inc.,* 202 F.3d 560, 566 (2nd Cir. 2000) (citing 42 U.S.C. § 2000e–3

and *Wimmer,* 176 F.3d at 134–135); *see also Sumner v. U.S. Postal Service,* 899 F.2d

203, 209 (2d Cir. 1990).

The First Circuit has further explained that "[i]n addition to protecting the filing

of formal charges of discrimination, § 704(a)'s opposition clause protects as well *informal*

*protests of discriminatory employment practices* including making complaints to

management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Fantini*, 557 F.3d at 32. And, this Court has of course adopted such rationale and stated in *Fontanillas–Lopez v. Morel Bauza Cartagena & Dapena LLC,* 995 F. Supp. 21, 51 (D.P.R. 2014) that:

> [P]rotected conduct under Title VII's anti-retaliation provision is not limited to filing an administrative charge of discrimination. It expressly prohibits retaliation for 'oppos[ing] any practice made an unlawful practice by Title VII.' *Petrarca v. Southern Union Co.,* No. 04–310S, 2007 WL 547690 at *12 (D.R.I. 2007) (citing 42 U.S.C. § 2000e–3(a)). *See also Pérez–Cordero v. Wal–Mart Puerto Rico, Inc.,* 656 F.3d 19, 31 (1st Cir. 2011). [. . .] 'The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, 'including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.' [*Matima v. Celli,* 228 F.3d 68, 78–79 (2d Cir. 2000)].

*Santos-Santos v. Puerto Rico Police Dep't*, 63 F. Supp. 3d 181, 189 (D.P.R. 2014), *aff'd sub nom, Santos-Santos v. Torres-Centeno*, 842 F.3d 163 (1st Cir. 2016).

Here, Costco argues that Oquendo cannot establish *any* of the requirements of a *prima facie* Title VII retaliation claim. While that may be true, the Court can quickly dispose of Oquendo's retaliation claim because she did not meet the first or second *prima facie* elements. As for the second element, it has been established throughout this Opinion that Oquendo failed to show that she suffered an adverse employment action. As to the first element—Oquendo also failed to show that she engaged in protected activity within the meaning of Title VII.

On this record, taking all inferences in favor of the plaintiff, the only action that can possibly be construed as an allegation of protected activity was the fact that in May 2016 Oquendo met with her supervisor Bergeron and she complained that the hours he was scheduling for her were too difficult to manage due to her pregnancy. She also requested to work day shifts through the remainder of her pregnancy. To give context to Oquendo's "complaint," when she returned from medical leave in April 2016,

Bergeron assigned her a rotating shift, which mostly included night shifts, including a
1:00AM shift.

Viewing the record in the light most favorable to plaintiff, even if such action
could be construed as an informal complaint to Costco management, it was certainly *not*
a complaint of *discrimination.* Oquendo's complaint to her supervisor about her work
schedule "neither pointed out discrimination against particular individuals [or herself]
nor discriminatory practices by" Costco. *See Fantini*, 557 F.3d at 32 (citing *Manoharan,
M.D., v. Columbia University College of Physicians & Surgeons,* 842 F.2d 590, 594
(2d Cir. 1988)). And, there is no evidence on the record that Costco's decision to schedule
Oquendo a rotating shift in April 2016, which included night shifts, involved a
discriminatory work practice.[10] Plainly, there is not an inkling of evidence in this case
to show that Oquendo opposed an employment practice made unlawful by Title VII—
even informally. In addition, there is no allegation nor evidence on this record that
Oquendo made a charge of discrimination, testified, assisted, or participated in any
manner in an investigation, proceeding or hearing under Title VII.

Under these facts and on this record, therefore, no reasonable fact finder could
conclude that Oquendo engaged in protected activity under Title VII. Plaintiff therefore
cannot meet the first *prima facie* element of a Title VII retaliation claim and thus her
claim cannot survive dismissal. *See Fantini*, 557 F.3d at 32 (affirming the district court's
dismissal of Appellant's Title VII retaliation claim because the alleged "misconduct"
that she "complained about" was *not an unlawful employment practice under Title VII*);
*see also Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999) ("In the
absence of such evidence, [Appellant's] claim of retaliation is not cognizable under Title
VII because [her] opposition was not directed at an *unlawful employment practice* of
[her] employer").

---

[10] It is worth noting that Oquendo did not dispute Costco's business reason for assigning her the
complained-of rotating shift: that other managers were on vacation, the warehouse was undergoing
overnight renovations, and Human Resources trainings were being conducted, beginning at 5:00AM.
(SUMF 47). It is also noteworthy that in the year prior to the present complaint, Oquendo's shifts varied
throughout the year and she was required to work different schedules, which frequently included night
shifts. (SUMF 46).

Accordingly, summary judgment should be granted in favor of Costco on this basis and Oquendo's Title VII retaliation claim shall be **DISMISSED with prejudice.**

a.      *Puerto Rico Law 115: retaliation claim*

In her complaint, Oquendo also asserts a retaliation claim under Puerto Rico Law 115. Costco argues that Oquendo's Law 115 claim should be dismissed because she failed to make out her *prima facie* showing. Oquendo failed to respond to this argument in her opposition to summary judgment.

In general, Puerto Rico Law 115 makes it unlawful for the employer to discharge, threaten, or discriminate against an employee regarding terms, conditions, compensation, location, benefits or privileges of employment should the employee offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico. *See* P.R. Laws Ann. tit. 29 § 194(a). The statute imposes an obligation on the employees to establish, through direct or circumstantial evidence, a *prima facie* case proving that: "they engaged in activity protected under Law 115 and then suffered discrimination at work." *Uphoff Figueroa v. Alejandro,* 597 F.3d 423, 433 (1st Cir. 2010). Law 115 is largely identical in scope to Title VII retaliation claims. *Velez v. Janssen Ortho, LLC,* 467 F.3d 802, 809 (1st Cir. 2006).

Because the burden of proof for Oquendo's Law 115 retaliation claim mirrors that of a Title VII retaliation claim, the former must suffer the same fate as the latter. Identical to her Title VII retaliation claim, Oquendo did not present any evidence, as was her burden, to show that she participated in an activity protected by §194(a). Because the Court found that under these facts and on this record, no reasonable fact finder could reach the conclusion that Oquendo engaged in protected activity under Title VII, her Law 115 claim must similarly be dismissed. *See id*. (upholding district court's dismissal of Law 115 claim where jury rejected plaintiff's claim of retaliation under federal law); *Moreta v. First Transit of PR, Inc.*, 39 F. Supp. 3d 169, 182 (D.P.R. 2014) (dismissing plaintiff's Law 115 claim because his Title VII retaliation claim was dismissed because he failed to raise a genuine issue of material fact).

Accordingly, summary judgment is granted in favor of Costco on this claim and Oquendo's Puerto Rico Law 115 retaliation claim is **DISMISSED with prejudice.**

E.    Remaining Supplemental Law Claim

To conclude, Plaintiff also alleges entitlement to recovery of damages under Articles 1802 and 1803 of Puerto Rico's Civil Code. Article 1802 is Puerto Rico's general tort statute. The statute provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31, § 5141. Article 1803 applies the principle of *respondeat superior* to Article 1802 claims. P.R. Laws Ann. tit. 31 § 5142; *Pagán Cólon v. Walgreens of San Patricio, Inc.,* 697 F.3d 1, 16 (1st Cir. 2012).

The Puerto Rico Supreme Court, and courts in this District, have held that to the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article 1802. *Santana-Colon v. Houghton Mifflin Harcout Pub. Co.*, 81 F. Supp. 3d 129, 140 (D.P.R. 2014). *See also Pagán Colón v. Walgreens of San Patricio, Inc.,* 2014 T.S.P.R. 20, at *4–*5, 2014 WL 782822; *Nieves Pérez v. Doctors' Center,* 2011 WL 1843057, at *7 (D.P.R. May 16, 2011); *Rosario v. McConnell Valdes,* 2008 WL 509204, *2 (D.P.R. Feb. 21, 2008). An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct *distinct* from that covered by the specific labor law(s) invoked." *See Rosario,* 2008 WL 509204, **1-2; *Medina v. Adecco*, 561 F. Supp. 2d 162, 175–76 (D.P.R. 2008).

In this case, based on the allegations and evidentiary material of record, it is clear that Oquendo grounds her Articles 1802 and 1803 claims on the same conduct that supports her employment discrimination and retaliation claims under federal and Puerto Rico laws. She alleges no independent tortious conduct by Costco that would make her tort claims plausible. To the extent that Oquendo cannot recover damages under the Puerto Rico general tort statute for the *same conduct* that is covered by the specific federal and Puerto Rico employment statutes that she invokes in this suit, the Court must **DISMISS with prejudice** her Articles 1802 and 1803 claims.

### V. <u>Conclusion</u>

For the reasons set forth above, the Court **GRANTS** Costco's motions to strike at Docket Nos. 38 and 39 and **GRANTS** Costco's motion for summary judgment at Docket No. 26 **in its entirety**. Accordingly, the Court **DISMISSES with prejudice** all claims against Costco.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of April 2020.

<u>***s/Marshal D. Morgan***</u>
MARSHAL D. MORGAN
United States Magistrate Judge